UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JESUS F.D.,

                Petitioner,

v.

MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security; TODD
BLANCHE, Acting Attorney General,
United States Department of Justice; TODD
M. LYONS, Acting Director of Immigration
and Customs Enforcement; DAVID
EASTERWOOD, Acting Director, St. Paul
Field Office Immigration and Customs
Enforcement; and RYAN SHEA, Sheriff of
Freeborn County, Minnesota,

                Respondents.

Case No. 26-CV-2486 (PJS/DTS)

ORDER

Mark H. Thieroff, SIEGEL BRILL, P.A., for petitioner.

David W. Fuller and Jaymarie Arlene Miranda, UNITED STATES
ATTORNEY'S OFFICE, for all respondents except Ryan Shea.

David John Walker, FREEBORN COUNTY ATTORNEY'S OFFICE, for
respondent Ryan Shea.

This matter is before the Court on petitioner Jesus F.D.'s petition for a writ of

habeas corpus.[1]  Jesus, a citizen of El Salvador, entered the United States without

inspection as an unaccompanied minor in September 2018.  V. Pet. ¶¶ 1–2, 12, 35, ECF

[1]Pursuant to this District's policy in immigration cases, the Court identifies
petitioner only by his first name and last initials.

No. 1; Sabin Decl. Ex. B at 3, ECF No. 6-2. Jesus was apprehended near the border,

processed as an unaccompanied alien child ("UAC"), and released to live with his aunt

in Minnesota. V. Pet. ¶¶ 2, 36. The Department of Homeland Security ("DHS")

initiated removal proceedings against Jesus, charging him as removable for being

present in the United States without being admitted or paroled and for failing to

possess valid entry documents. *Id.* ¶ 37; *see also* 8 U.S.C. §§ 1182(a)(6)(A)(i),

(a)(7)(A)(i)(I). Jesus subsequently filed an application for asylum and withholding of

removal that has been pending before United States Customs and Immigration Services

("USCIS") since April 2020. V. Pet. ¶ 38.[2]

Jesus also filed a petition for Special Immigration Juvenile ("SIJ") status.

Congress created SIJ status in 1990 to protect "vulnerable immigrant children and

provide them a pathway to citizenship." *Id.* ¶ 26. USCIS approved Jesus's petition in

2021. *Id.* ¶¶ 40–41. "Among other benefits," an SIJ beneficiary such as Jesus has

"eligibility and the right to apply for adjustment of status to that of lawful permanent

---

[2]Based on Jesus's status as a UAC and the timing of his asylum application, he is a member of the *J.O.P.* settlement class. *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 8:19-CV-1944-SAG (D. Md.); *see also* V. Pet. ¶ 39; ECF No. 5 at 2 (stating that respondents "made a request to USCIS to expedite" Jesus's asylum application "as contemplated" by the *J.O.P.* settlement agreement); Campbell Decl. ¶ 4, ECF No. 7 (same). As a class member, Jesus is entitled to certain protections, including initial adjudication of his asylum application by USCIS (rather than by the Executive Office for Immigration Review). V. Pet. ¶ 39; *J.O.P.*, 2026 WL 1469149, at *2 (D. Md. May 26, 2026) (noting that the *J.O.P.* settlement agreement requires USCIS "to assume initial jurisdiction over Class Members' asylum applications").

resident[] while within the United States." *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 160 (3d Cir. 2018) (citing 8 U.S.C. §§ 1255(a), (h)(1)).  On May 12, 2022, Jesus received a four-year, renewable grant of deferred action and employment authorization while he waits for a visa to become available so that he can apply to adjust his status to lawful permanent resident ("LPR").  V. Pet. ¶¶ 3, 30–34, 41; *see also* ECF No. 8 at 17 (I-797 approval notice of deferred action).  Based on Jesus's SIJ status and the accompanying grant of deferred action, an immigration judge granted Jesus's unopposed motion to dismiss the removal proceedings against him on December 4, 2024.  V. Pet. ¶ 42.

Jesus had no further contact with immigration officials until he was apprehended by Immigration and Customs Enforcement ("ICE") on April 14, 2026.  *See id.* ¶ 4; Sabin Decl. Ex. B at 2.  Three days earlier, Jesus had been arrested and charged with driving while impaired, and ICE was alerted to "a biometric match to a booking record at the Dakota County Jail."  Sabin Decl. Ex B at 2; V. Pet. ¶¶ 4, 46.  A deportation officer reportedly "conducted records checks and determined [Jesus] was deportable and probable cause existed" to issue an immigration detainer and Form I-200 warrant for Jesus's arrest.  Sabin Decl. Ex. B at 2.  ICE arrested Jesus outside the Dakota County Jail after he was released on conditions in his pending criminal case.  *Id.*; V. Pet. ¶ 46.

Following Jesus's arrest by ICE, he was transported to the Freeborn County Jail, where he is currently detained.  V. Pet. ¶ 47.  There, Jesus was served with a Form I-200

warrant that had been issued that same day (that is, April 14, 2026). Sabin Decl. Ex. A, ECF No. 6-1. The next day (April 15, 2026), a Notice to Appear ("NTA") charging Jesus as removable was both issued and served; the NTA cited the same statutes that DHS had cited when it charged Jesus as removable in 2018. Sabin Decl. Ex. C, ECF No. 6-3; *see also* 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).

Jesus now seeks habeas relief in the form of immediate release, arguing that his continued detention is unlawful under the governing statutes and regulations and under the Fifth Amendment. *See* V. Pet. ¶¶ 48–78; ECF No. 8 at 8–11.

### A. *Statutory Framework: ICE's Arrest Authority*

Like any federal agency, ICE "literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022) (quotation omitted). Through the Immigration and Nationality Act, Congress provided two mechanisms by which "it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, under 8 U.S.C. § 1357(a), ICE has "limited authority" to make warrantless arrests. *Arizona* 567 U.S. at 408. As relevant to this case, an immigration officer may arrest an alien without a warrant for being "'in the

United States in violation of any [immigration] law or regulation,' . . . but only where the alien 'is likely to escape before a warrant can be obtained.'" *Id.* (quoting 8 U.S.C. § 1357(a)(2)) (first alteration in original).

### B. *Arrest Pursuant to Form I-200 Administrative Warrant*

As discussed above, Jesus was arrested on April 14, 2026, and he was served with a Form I-200 administrative warrant at some point later that day. *See* Sabin Decl. Ex. A. But the NTA initiating removal proceedings against Jesus was not issued until the following day, April 15, 2026. *See* Sabin Decl. Ex. C. This timing renders the Form I-200 warrant invalid.

A Form I-200 warrant empowers ICE to arrest aliens *during* removal proceedings. *See* 8 C.F.R. § 236.1(b)(1); 8 U.S.C. § 1226(a). Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist. *See, e.g.*, *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927 (S.D. Iowa 2026) ("The temporal aspects of this language are clear: an arrest warrant may be issued '[a]t the time of issuance' of the Notice to Appear or 'thereafter.' Not 'before.'") (quoting 8 C.F.R. § 236.1(b)(1)). To be valid, then, a Form I-200 warrant must issue "at the same time or after the Department of Homeland Security issues an NTA." *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026). This is because an NTA is a "case-initiating pleading[]" — "like an indictment in a criminal

case"—that "serves as the basis for commencing a grave legal proceeding." *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (quotation omitted); *see also* 8 U.S.C. § 1229(a)(1) (stating that ICE "shall" give aliens in removal proceedings "written notice" of the proceedings in the form of a "notice to appear").

It is possible that § 236.1(b)(1) would be satisfied "if the Notice to Appear is issued contemporaneous with the arrest warrant, even if the latter momentarily precedes the former." *Gonzalez Ochoa*, 816 F. Supp. 3d at 927–28 (concluding that ICE lacked lawful authority to arrest a petitioner—despite an otherwise valid warrant—because the "Notice to Appear was not issued until some unspecified time later in the day" after the petitioner's initial arrest). In this case, however, the NTA was issued a day later than the Form I-200 warrant. Sabin Decl. Exs. A, C. Because the NTA did not issue until the day *after* Jesus's arrest, the Court concludes that Jesus was not arrested pursuant to a valid warrant under 8 U.S.C. § 1226(a).

### C. Warrantless Arrest Pursuant to 8 U.S.C. § 1357(a)(2)

The fact that Jesus's arrest warrant was invalid does not end the inquiry, however. Respondents contend that Jesus is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and that an arrest warrant is therefore not necessary. *See* ECF No. 5 at 1–2, 10–11. Even assuming that respondents are correct that § 1225(b)(2) governs Jesus's detention, ICE could detain Jesus pursuant to § 1225(b)(2) only if it "first

compl[ied] with 8 U.S.C. § 1357(a)(2), which addresses federal immigration officials'

authority to make warrantless arrests." *Francisco M.A. v. Blanche*, No. 26-CV-2032

(JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026).  Under § 1357(a)(2), an

immigration official may conduct a warrantless arrest of an alien, but only "if he has

reason to believe that the alien so arrested is in the United States in violation of any

[immigration] law or regulation *and* is likely to escape before a warrant can be obtained

for his arrest."  8 U.S.C. § 1357(a)(2) (emphasis added).  The Eighth Circuit has

construed "reason to believe" in § 1357(a)(2) to mean "constitutionally required

probable cause."  *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

It is not entirely clear how or why ICE determined that it had probable cause to

believe that Jesus was unlawfully present in the United States.  *See* Sabin Decl. Ex. B at 2

(stating that a deportation officer determined that there was probable cause to issue an

arrest warrant for Jesus after "conduct[ing] records checks").  There were no pending

removal proceedings against Jesus at the time of his arrest, and the NTA that was

issued on the following day asserted only grounds for removal from which Congress

explicitly exempted SIJ beneficiaries such as Jesus.  *Compare* Sabin Decl. Ex. C (charging

Jesus as removable for being present in the United States without being admitted or

paroled and for not being in possession of a valid entry document), *with* 8 U.S.C.

§ 1255(h)(2)(A) (exempting SIJ beneficiaries from various grounds of inadmissibility,

-7-

including being present without admission or parole and a lack of valid entry documents).  Likewise, there is no evidence that ICE relied on Jesus's pending criminal charge as a basis for his detention, and respondents do not contend that Jesus's SIJ status was or will be revoked.  *See generally* ECF No. 5; *see also Osorio-Martinez*, 893 F.3d at 163–64 ("SIJ status, once granted, may not be revoked except 'on notice,' 8 C.F.R. § 205.2, and upon the Government's compliance with a series of procedural safeguards.").

But even assuming that ICE had probable cause to believe that Jesus was unlawfully present in the United States, nothing in the record suggests that ICE had any basis to conclude that Jesus was a flight risk.  In fact, the government previously determined that Jesus did *not* pose a risk of flight.  *See* V. Pet. ¶ 36; 8 U.S.C. § 1232(c)(2); 45 C.F.R. § 410.1201(a)(3).  The mere fact that Jesus may be removable is insufficient.  *See Francisco M.A.*, 2026 WL 1229701, at *3 ("To hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one."); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1007 (N.D. Ill. 2016) ("Nor can it be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE.  Such a reading would render the

-8-

limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2)

meaningless.").[3]

The Court therefore finds that Jesus's warrantless arrest was not lawful under

either §§ 1226(a) or 1357(a)(2).  Accordingly, Jesus's petition is granted in part, and the

Court orders respondents to release him within 48 hours of the entry of this Order.

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for

unlawful executive detention).[4]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

---

[3]Jesus further contends that he is *not* removable due to his status as a UAC and SIJ and due to his membership in the *J.O.P.* settlement class.  ECF No. 8 at 12.  Where "removal seems a remote possibility," "preventing flight" is a "weak or nonexistent" justification for detention.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (discussing the regulatory goals of civil detention after an alien has been ordered removed); *see also J.R.R. v. Genalo*, No. 26-CV-1245 (PKC), 2026 WL 691803, at *3 (E.D.N.Y. Mar. 11, 2026) (characterizing respondents' invocation of § 1225(b)(2)(A) as "particularly puzzling" when the petitioner "in fact cannot be removed due to his membership in the *J.O.P.* settlement class"); *but see* 8 C.F.R. § 236.21(c)(1) (clarifying that a grant of deferred action "does not preclude DHS from commencing removal *proceedings*," but rather, only forbears actual removal) (emphasis added).

[4]Because the Court finds that Jesus's arrest was unlawful, it does not reach Jesus's additional arguments regarding substantive and procedural due process, his SIJ status and deferred action, the applicability of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), and his membership in the *J.O.P.* settlement class.

1.      Petitioner's verified petition for a writ of habeas corpus [ECF No. 1] is

GRANTED IN PART.

2.      Respondents must release petitioner within 48 hours of entry of this order.

3.      The remainder of petitioner's petition [ECF No. 1] is DENIED WITHOUT

PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 10, 2026                              /s/ Patrick J. Schiltz
                                                  Patrick J. Schiltz, Chief Judge
                                                  United States District Court